Green, J.
The decision of this case in favour of the appellant, does not appear to me to involve the proposition, that in all cases and under all circumstances (except that of persons bound to service in one state, escaping to another, provided for by the constitution of the U. States), a slave born and owned in Virginia, and found in another state, may be emancipated by the laws of that state, so as to enable him to assert that right in our courts. If it did, I should wish the cause to be submitted to the consideration of a full court. My strong impression is, that such a proposition cannot be supported, and was rightly denied by this court in *181 Lewis v. Fullerton, where it was held, that a slave temporarily employed in Ohio, for the benefit of her master, a resident citizen of Virginia, was not thereby entitled to be considered as free in the courts of Virginia, although she might be so considered in those of Ohio.
In this case, a slave born and owned in Virginia, was carried to Maryland to reside there, and he was kept there for twelve years, by one who acquired a title to him by marriage, then being a resident citizen of Maryland, or soon afterwards removing and domiciliating himself there; thus voluntarily becoming a permanent member of that community, and submitting himself and his property to the full force of the laws of Maryland, by which the slave was declared to be free; and thereby also (according to the opinion of judge Cabell, in Murray v. M’Carty, 2 Munf. 393. in which I concur) becoming, upon the principles of natural law, and the spirit of our institutions, a citizen of that state. We are, therefore, called upon in this case, to enforce rights acquired in Maryland, under the laws of that state, against one claiming under a citizen of that state, after those rights were vested. And I see no objection, in principle, to giving full effect here, to those laws, operating on the rights of persons, who were to all intents and purposes justly subjected to them, and touching the rights of no others: in this respect, the case is like that of Griffith v. Fanny, where a citizen of Virginia carried a slave to Ohio, and there sold and delivered her to a resident citizen of that state, who, in fraud of the laws of Ohio, look a bill of sale to a resident citizen of Virginia, in trust for himself, and retained possession of the slave in Ohio for two years. The court there, enforced the laws of Ohio against a resident citizen of that state, without affecting the rights or interests of any other.
The english cases cited do not touch this, in any point. They were all collated and examined by lord Stowell in the case of The mongrel woman Grace, decided by him in 1827. And he declared their effect to be, that the laws of England did not emancipate slaves brought there, or annihilate the *182 master’s rights, but afforded no remedy for enforcing them, the relation of master and slave not being known to the common law; and that, upon the return of the slave to the country from whence he was brought, the subsisting rights of the master might be there enforced, according to the laws of that country.
Carr, J.
Agreeing, as I do, with the general view taken of this case by my brother Green, I 1 should not add a word, but to mark the exact extent to which I mean to go. The law of Maryland, having enacted, that slaves carried into that state for sale or to reside, shall be free; and the owner of the slave here, having carried him to Maryland, and resided there with him for twelve years, thus becoming himself a citizen of Maryland, and voluntarily subjecting himself and the slave to the operation of her laws; I think the right to freedom vested, and could not be divested, by the bringing him back afterwards to Virginia.
Cabell, J. concurred in the opinion, that the judgment should be reversed, and judgment entered for the appellant